**FOURTH BRANCH ASSOCIATES (MECHANICVILLE), Petitioner,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Niagara Mohawk Power Corporation, Intervenor.**

**No. 00–1173.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 2001.

Decided June 19, 2001.

Ben Finkelstein argued the cause for petitioner. With him on the briefs were Frances E. Francis, William S. Huang and Andrea G. Lonian.

Monique L. Watson, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was Dennis Lane, Solicitor.

William J. Mertens was on the brief for intervenor.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The Federal Energy Regulatory Commission ("FERC") issued a joint license to Fourth Branch Associates (Mechanicville) and Niagara Mohawk Power Corporation to redevelop the Mechanicville Hydroelectric Plant, owned by Niagara Mohawk. The relationship between the co-licensees eroded, and a spate of litigation ensued. Within two years of receiving the license, Fourth Branch filed a complaint with the Commission alleging that Niagara Mohawk was engaging in anticompetitive conduct in violation of the Federal Power Act, see 16 U.S.C. § 803(h), in attempting to limit the power output of the Mechanicville plant by refusing to purchase power from the plant.

After efforts to mediate the dispute failed, the Commission issued an order dismissing the complaint because Fourth Branch had not articulated facts sufficient to establish a claim for anticompetitiveness. See Fourth Branch Assocs. (Me-

chanicville) v. Niagara Mohawk Power Corp., 89 F.E.R.C. ¶ 61,194, 1999 WL 1063786 (1999). Explaining that the two parties were unable to continue operating the plant—because one is unwilling (Niagara Mohawk) and the other unable (Fourth Branch)—the Commission gave notice of its intent to accept the parties' implied surrender of the Mechanicville license. See id. at 61,598. The Commission subsequently denied Fourth Branch's request for rehearing. See Fourth Branch Assocs. (Mechanicville) v. Niagara Mohawk Power Corp., 90 F.E.R.C. ¶ 61,250, 2000 WL 280770 (2000).

Fourth Branch petitions for review of these orders. First, it contends that the finding of implied surrender is unreasonable, arbitrary and capricious, and unsupported by substantial evidence. Second, it maintains that the dismissal of its anticompetitiveness complaint was arbitrary and capricious and not supported by substantial evidence. Because there has been no final agency action, we do not have jurisdiction to consider the implied surrender finding. Additionally, for reasons more fully set out below, we hold that the Commission did not err in dismissing Fourth Branch's complaint.

## I. BACKGROUND

The Mechanicville Hydroelectric Plant, located on the Hudson River in New York, is listed on the *National Register of Historic Places*. In fact, until recently it was the oldest continuously operating hydroelectric plant in the country. The Mechanicville plant is also at the heart of a protracted battle between Fourth Branch and Niagara Mohawk.[1] At various times,

1. A more complete history of the two companies' troubles is recounted in *Niagara Mohawk Power Corp.*, 74 F.E.R.C. ¶ 61,352, 62,-079–81, 1996 WL 141831 (1996); *Fourth Branch Assocs. (Mechanicville) v. Niagara Mohawk Power Corp.*, 89 F.E.R.C. ¶ 61,194, 61,- 589–93, 1999 WL 1063786 (1999), *reh'g denied*, 90 F.E.R.C. ¶ 61,250, 2000 WL 280770 (2000); and *Fourth Branch Assocs. (Mechanicville) v. Niagara Mohawk Power Corp.*, 90 F.E.R.C. ¶ 61,250, 61,837–39, 2000 WL 280770 (2000).

this battle has been waged before the New York Public Service Commission, the Albany County Supreme Court, the Third Department of the Appellate Division of the New York Supreme Court, the U.S. Bankruptcy Court for the Northern District of New York, the U.S. District Court for the Northern District of New York, the Federal Energy Regulatory Commission—and now this Court.

The relationship between Fourth Branch and Niagara Mohawk began peacefully in 1987, when they applied jointly to redevelop the Mechanicville plant under a new FERC license. In August 1989, the two companies entered into several contracts under which Fourth Branch agreed to operate the plant and Niagara Mohawk agreed to purchase power from the plant. Almost immediately the relationship began to deteriorate.

In 1990, the New York Public Service Commission rejected the power purchase agreement. Three years later, when the companies' efforts to renegotiate the purchase agreement collapsed, Niagara Mohawk terminated the operation agreement. These actions are the basis of ongoing litigation in New York's state courts.

Meanwhile, in 1993, FERC issued the license to Fourth Branch and Niagara Mohawk. The following year, after Niagara Mohawk stopped paying Fourth Branch for power it received from the Mechanicville plant, Fourth Branch filed for Chapter 11 bankruptcy. Fourth Branch asked the bankruptcy court to require Niagara Mohawk to accept and pay for power from the plant. After initially granting the request, the court authorized Niagara Mohawk to "cease accepting electricity" from Fourth Branch. *In re Fourth Branch Assocs. Mechanicville*, No. 94–10972, slip op. at 2 (Bankr.N.D.N.Y. Nov. 22, 1995) (order granting motion in part and denying motion in part). By 1996, the bankruptcy court dismissed Fourth Branch's Chapter 11 claim for lack of prosecution.

In 1995, Fourth Branch filed a complaint with FERC alleging that Niagara Mohawk was engaging in anticompetitive conduct by attempting to limit the power output of the Mechanicville plant. In March 1996, after asking the parties to apply either for a license transfer or surrender, the Commission ordered that a settlement judge mediate the two companies' dispute. *Niagara Mohawk Power Corp.*, 74 F.E.R.C. ¶ 61,352, 62,081, 1996 WL 141831 (1996). Initially, the mediation seemed to be successful: Fourth Branch agreed to purchase Niagara Mohawk's interest in the Mechanicville project. *Niagara Mohawk Power Corp.*, 78 F.E.R.C. ¶ 63,004, 1997 WL 10606 (1997). Unfortunately, the success was short lived—Fourth Branch was unable to obtain funding to make the purchase. *See id.* at 65,127. FERC staff responded by again asking for a plan to transfer the Mechanicville license or surrender it. By that time, Fourth Branch had vacated the Mechanicville plant, "apparently as the result of an eviction action brought by Niagara Mohawk in a New York court." *Fourth Branch Assocs.*, 89 F.E.R.C. at 61,590.

In 1997, Niagara Mohawk moved to dismiss Fourth Branch's complaint. In its motion, Niagara Mohawk contended that the complaint was moot in light of the bankruptcy court's ruling that Niagara Mohawk was not obligated to purchase power from the Mechanicville project. Around this same time, Niagara Mohawk completely stopped producing power at the plant.

The following year, Fourth Branch submitted a unilateral settlement offer, proposing to pay Niagara Mohawk fair market value for its interest in the Mechanicville project. (The value was to be determined by a federal district court in

a condemnation proceeding initiated by Fourth Branch.) Within five months, Fourth Branch amended its offer, now proposing that Niagara Mohawk transfer its interest in the plant to Fourth Branch at no cost and then purchase power produced there by Fourth Branch. Not surprisingly, Niagara Mohawk opposed this offer and instead asked the Commission to deem the Mechanicville license impliedly surrendered.

On November 9, 1999, the Commission dismissed Fourth Branch's complaint and unilateral settlement offer. *See id.* at 61,-589. In its decision, the Commission found that the Mechanicville license had not been violated and that the plant was being adequately maintained. *See id.* at 61,596–97 & n. 64. The Commission also concluded that Fourth Branch had not "set forth any facts that warrant a further investigation of its allegation that Niagara Mohawk has engaged in anticompetitive behavior under the Mechanicville license." *Id.* at 61,597.

Finally, the Commission determined that the "public interest will be best served if the Mechanicville Project license is terminated." *Id.* It explained that "the doctrine of implied surrender" offered an appropriate resolution to the "exceptional circumstances" of this dispute. *Id.* at 61,-597–98. Consequently, the November 1999 order gave Niagara Mohawk and Fourth Branch notice that the Commission "intend[s] to accept surrender of the license." *Id.* at 61,598. Accordingly, the Commission instructed its staff to "initiate a proceeding to prepare an environmental analysis, which will include consultation on the disposition of the historic property, to determine what restoration measures are appropriate before an order is issued accepting surrender of the license." *Id.* at 61,598 n. 73.

Fourth Branch requested a rehearing. On March 16, 2000, the Commission denied this request. *See Fourth Branch Assocs. (Mechanicville) v. Niagara Mohawk Power Corp.,* 90 F.E.R.C. ¶ 61,250 (2000). In its denial, the Commission reiterated its earlier conclusions. The Commission also clarified that it will not make a "final decision on whether to accept the implied license surrender until" it has conducted analyses and consultations required under the National Environmental Policy Act, 42 U.S.C. § 4332, and the National Historic Preservation Act, 16 U.S.C. § 470f. 90 F.E.R.C. at 61,840 n. 17. In addition, the Commission declared that it would examine "reasonable alternatives to license surrender." *Id.* at 61,840.

Fourth Branch petitions for review of these orders. In its petition, Fourth Branch primarily argues that (1) the finding that the co-licensees had impliedly surrendered the Mechanicville license is unreasonable, arbitrary and capricious, and unsupported by substantial evidence; and (2) the dismissal of its complaint alleging that Niagara Mohawk had engaged in anticompetitive behavior is arbitrary and capricious and unsupported by substantial evidence. In response, the Commission contends that we lack jurisdiction over Fourth Branch's petition. We must address this contention first.

## II. JURISDICTION

Although the Commission maintains both that Fourth Branch lacks standing and that its petition is not ripe for review, we "need not identify every ground for holding that a claim is not justiciable." *Indep. Petroleum Ass'n of Am. v. Babbitt,* 235 F.3d 588, 594 (D.C.Cir.2001). Indeed, we have no trouble dismissing a claim "based on one jurisdictional bar rather than another." *Louisiana Envtl. Action Network v. Browner,* 87 F.3d 1379, 1384 (D.C.Cir.1996). Here, Fourth Branch's challenge to the implied surrender pro-

ceeding is not a challenge to any final agency action.

■ A party may only petition for judicial review of a final agency action. *See* 5 U.S.C. § 704; 16 U.S.C. § 825*l*(b); *Papago Tribal Util. Auth. v. FERC,* 628 F.2d 235, 238–39 (D.C.Cir.1980). If the agency's action is not final, we cannot reach the merits of the petition. *See Public Citizen v. Office of the U.S. Trade Representatives,* 970 F.2d 916, 918 (D.C.Cir.1992). When assessing whether an agency action is final, we consider "whether the agency's position is 'definitive' and whether it has a 'direct and immediate ... effect on the day-to-day business' of the parties." *Ciba-Geigy Corp. v. U.S. EPA,* 801 F.2d 430, 436 (D.C.Cir. 1986) (quoting *FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (internal quotes omitted)).

■ The initiation of an implied surrender proceeding is not a final agency action. The Commission has merely "issue[d] notice of its intent to accept the implied surrender of the project license." *Fourth Branch Assocs.,* 89 F.E.R.C. at 61,589. In its order denying Fourth Branch's rehearing request, the Commission expressly stated that it has made "no final decision on whether to accept the implied license surrender." *Fourth Branch Assocs.,* 90 F.E.R.C. at 61,840 n. 17. There is nothing definitive in an agency's intending to do something, and an agency that has made "no final decision" could not possibly have taken a final action. Pending completion of the proceeding, the Commission may or may not accept implied surrender of the Mechanicville license. We do not have jurisdiction to become entangled in "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *Metzenbaum v. FERC,* 675 F.2d 1282, 1289 (D.C.Cir.1982) (internal quotes omitted).

Furthermore, we do not detect what effect the Commission's action has had (or could have) on Fourth Branch's business. The Commission's decision to initiate an implied surrender proceeding has not imposed any obligation, denied any right, or formalized any legal relationship. *See Alabama Power Co. v. FERC,* 993 F.2d 1557, 1566 (D.C.Cir.1993). If we conclude that the license was impliedly surrendered, Fourth Branch obviously would remain exactly in the same position it is now—and the Commission still might not accept the implied surrender. Likewise, even if we were to conclude that the license had not been impliedly surrendered, the Mechanicville plant would continue to sit in the same condition, and Fourth Branch would remain in the same position, a co-licensee who is unable to enter the plant, let alone produce power there. Plainly, our abstention will not "result in irreparable injury" to Fourth Branch. *Papago Tribal Util. Auth.,* 628 F.2d at 238. Until the Commission reaches a final decision—either accepting the surrender or coming to some alternative resolution—Fourth Branch's challenge is not fit for review.

■ Fourth Branch argues that pursuant to Rule 27(g) of this Circuit, the Commission should have raised its jurisdictional objection within 45 days of this case being docketed. The Commission first contended that we lack jurisdiction in its response brief, which it filed 271 days after this case was docketed. The Commission's foot-dragging certainly "leave[s] something to be desired." *Mississippi Valley Gas Co. v. FERC,* 68 F.3d 503, 510 (D.C.Cir. 1995). Nevertheless, it does not confer jurisdiction on this Court or compel us to consider a claim based on an agency action that is not final. *See* Fed. R.App. P. 1(b).

■ In contrast to its initiation of the implied surrender proceeding, the Commission's dismissal of Fourth Branch's

complaint against Niagara Mohawk is unquestionably a final agency action. In its order denying rehearing, the Commission was clear that its decision was final: although it will consider alternatives to implied surrender in the ongoing proceeding, it unequivocally stated that it would not reconsider Fourth Branch's complaint. *See Fourth Branch Assocs.*, 90 F.E.R.C. at 61,840. The Commission's brief does not explain why the dismissal of Fourth Branch's complaint is not ripe for review nor why Fourth Branch lacks standing to challenge it. The dismissal of such a complaint is a final agency action that we are empowered to review, and there is no reason to refrain from considering the merits of the remaining claims in Fourth Branch's petition. *See Papago Tribal Util. Auth.*, 628 F.2d at 239.

## III. THE MERITS OF FOURTH BRANCH'S PETITION

Section 10(h)(1) of the Federal Power Act prohibits "[c]ombinations, agreements, arrangements, or understandings, express or implied, to limit the output of electrical energy, to restrain trade, or to fix, maintain, or increase prices for electrical energy or service." 16 U.S.C. § 803(h)(1). Relatedly, under § 10(h)(2), "conduct under the license" that conflicts with "the policies expressed in the antitrust laws" and is "not otherwise justified by the public interest ... shall be prevented or adequately minimized." *Id.* § 803(h)(2).

■ In its complaint, Fourth Branch alleged that Niagara Mohawk attempted to "coerce [Fourth Branch] into an agreement or arrangement to limit the electrical energy available from the Mechanicville Project." The only fact that Fourth Branch offered to support its allegation is that Niagara Mohawk "refus[es] to accept Project power" from the Mechanicville plant, knowing that Fourth Branch's "existence depends" on the revenue from such

sales. The Commission refused to investigate this complaint, explaining that Fourth Branch had failed to "set forth any facts that warrant a further investigation." *Fourth Branch Assocs.*, 89 F.E.R.C. at 61,597. Specifically, the Commission concluded that Fourth Branch had "not suggested that Niagara Mohawk engaged in" activities barred by § 10(h)(1) and had not complained about any conduct under the license as required by § 10(h)(2). In its petition, Fourth Branch argues that the Commission's decision is (1) arbitrary and capricious because it represents an "unexplained about-face" from a previous statement in which the Commission noted the seriousness of Fourth Branch's allegations and (2) unsupported by substantial evidence because the record demonstrates that Niagara Mohawk violated the license.

■ Our precedent is clear: the Commission "need not launch a full investigation just because a party cries 'anticompetitive behavior.'" *Michigan Pub. Power Agency v. FERC*, 963 F.2d 1574, 1583 (D.C.Cir.1992). Here, the Commission did not act arbitrarily or capriciously in concluding that Fourth Branch's vague assertions did not establish adequate grounds for investigating Niagara Mohawk's conduct. Although there is no question "the co-licensees are at loggerheads," *Fourth Branch Assocs.*, 89 F.E.R.C. at 61,596, Fourth Branch did not allege any collusive behavior by Niagara Mohawk as required to establish a claim under § 10(h)(1). If anything, Niagara Mohawk's refusal to take power from Fourth Branch might be a violation of their contracts, not an effort to restrain trade "under the license." *See* 16 U.S.C. § 803(h)(2). If Fourth Branch believes that Niagara Mohawk's actions interfere with its ability to operate the project as they agreed, Fourth Branch should proceed with contract claims in

state court (as it has done). Indeed, the Commission came to this conclusion in the orders now under review. *See Fourth Branch Assocs.*, 90 F.E.R.C. at 61,839; *Fourth Branch Assocs.*, 89 F.E.R.C. at 61,597. The Commission properly concluded that far from reflecting anticompetitive conduct, Niagara Mohawk's divestiture of its hydroelectric projects was ordered by the New York Public Service Commission as part of an industry restructuring. *See Fourth Branch Assocs.*, 89 F.E.R.C. at 61,597. These conclusions represent a reasonable basis for not investigating Niagara Mohawk's conduct.

Fourth Branch's claim that the Commission's orders represent an "unexplained about-face" is based on a statement in the Commission's order requiring the parties to mediate their dispute. In that order, the Commission wrote that it was "concerned with the seriousness of the antitrust allegations in the complaint." *Niagara Mohawk Power Corp.*, 74 F.E.R.C. at 62,081. Despite what Fourth Branch now suggests, the Commission was not endorsing the viability or validity of Fourth Branch's claims. Rather, it was explaining that mediation seemed appropriate in light of: (1) Fourth Branch's complaint (and subsequent request for mediation) and (2) the Commission's concern with the "safe operation of the Mechanicville Project over the 47 years remaining in the term of its license." *Id.* The Commission never ruled that Fourth Branch actually articulated an anticompetitiveness claim worthy of investigation. Rather, the claim—in conjunction with the numerous "ongoing controversies between the two colicensees"—simply justified the Commission's attempt "to mediate a reasonable and workable solution to the problems presented by the Mechanicville Project." *Id.* This attempt is not inconsistent with the Commission's ultimate conclusion that Fourth Branch had not "set forth any facts

that warrant a further investigation." *Fourth Branch Assocs.*, 89 F.E.R.C. at 61,597. The Commission never held anything different. It simply had stated that the Fourth Branch's allegations were serious enough to merit mediation, but only when considered in tandem with the myriad other disputes between the parties and the Commission's concern with the "safe and efficient performance" of the project. *Niagara Mohawk Power Corp.*, 74 F.E.R.C. at 62,081.

In its petition, Fourth Branch raises several other ancillary issues. We have considered each of these and find them meritless. The Commission's orders are supported by substantial evidence and do not represent abuses of discretion.

## IV. CONCLUSION

For the foregoing reasons, the petition for review is denied.